Rockingham
No. 7922

PAUL P. RICCARDI

v.

PAUL GARABEDIAN

March 31, 1978

*William B. Cullimore,* of Farmington, for the plaintiff.

*Robert Shaw* and *Norman C. Gile,* of Exeter, and *Frederick W. Murdock, Jr.,* of Methuen, Massachusetts, for the defendant.

PER CURIAM. The issues argued in this case are whether the court abused its discretion by denying plaintiff a continuance and requiring him to try his own case, and whether the court should have granted him a new trial. By bill in equity sworn to on November 26, 1973, plaintiff sought rescission of an agreement to buy from defendant land in Somersworth, formerly part of Granite State Park, a return of deposits, and damages. On March 15, 1977, counsel who filed the bill in equity withdrew. Shortly thereafter the case was scheduled for trial on May 2, 1977. It was consolidated with other cases arising out of the same circumstances and involving the claims of various subcontractors and a contractor.

On April 28, 1977, new counsel for the plaintiff attempted to obtain a continuance to allow him time to prepare for trial, but this was denied subject to exception. It does not appear that plaintiff was present at this proceeding. The case was tried with the other consolidated cases, beginning May 2. The plaintiff appeared pro se before Master *Leonard C. Hardwick,* Esq., who recommended that the petition be dismissed. The court entered a decree in accordance with the master's report, and plaintiff's exceptions were transferred by *Perkins,* J.

The master found that the plaintiff was a man of considerable experience in land development and apartment building construction. The master also found that plaintiff and defendant entered into two agreements on November 20, 1972, one for the purchase of a portion of the former Granite State Park for $319,000 and the other for an option to buy another portion of the park, for which he paid $6,000. Plaintiff paid defendant $10,000 as a down payment on the purchase price of the first parcel. The deed was to be delivered and the purchase price paid on or before January 20, 1973. Plaintiff was unable to perform by that date. On April 9, 1973, the agreement was amended to extend the closing to June 30, 1973, for which plaintiff paid $35,000 with the understanding that on his failure to perform, the defendant at his option could retain the $35,000 and the original $10,000 as liquidated damages. The

master found that in August 1973, plaintiff secured another extension for thirty days by paying $10,000, which was not to be applied to the purchase price but was consideration only for the extension. He also paid $20,000 for an extension of the option. The master found that the plaintiff never exercised his option on the second tract, never secured financing to purchase the first parcel, and never performed his part of the agreement.

Plaintiff was also unable to secure a building permit to start constructing the apartments because he did not have title to the land. Somersworth was considering a moratorium on apartment building. In anticipation of the moratorium, defendant applied for a permit in his own name in June 1973. The permit was issued to him on June 18, 1973, and was to be void if construction had not started within ninety days. The Somersworth ordinances make building permits nontransferable, but to preserve whatever rights he had, plaintiff employed a contractor, Mr. Allen, to develop the site. The contractor expended over $67,000. The master found that the parties never had any agreement regarding this work, and that defendant never supervised any of the work.

At trial, plaintiff testified that he could have obtained financing if he had obtained a permit, that he could not get a permit because he could not get title, and that he could not get title because defendant did not get subdivision approval until June 18, 1973. This was the same day that defendant obtained a building permit in his own name. All this occurred during the period of the plaintiff's extensions, which did not expire until sometime in September 1973.

Plaintiff's brief deals only with the questions whether the trial court abused its discretion in denying a continuance, and whether the trial was so unfair that plaintiff should be given a new trial. There is no record from which we can determine what was presented to the trial court in support of the motion to continue.

Plaintiff has filed an affidavit which, in the absence of any record, he asks be considered in explanation of his inability to obtain counsel before the trial date. He states that he was in Florida at the time counsel withdrew on March 15 and did not receive the notice until March 23; that he came north and consulted a Massachusetts lawyer on April 1 and understood that the lawyer would take the case; and that on April 21 he learned by telephone that the lawyer would be unable to represent him. The plaintiff further states that on April 25 he consulted a lawyer in Nashua, New Hampshire, who referred him to another Nashua lawyer; that on

the same day he called the other lawyer and obtained an appointment for April 27, at which the lawyer stated he could represent plaintiff if he could get the case continued; and that on April 29 this lawyer informed him a continuance could not be obtained and withdrew. The plaintiff avers that on the same day he contacted a Portsmouth lawyer, who agreed to meet him at the courthouse on Monday morning May 2 and that at that meeting he was told the lawyer could not take the case because he had been assigned to try a murder case and would be tied up for two weeks.

The facts stated in the affidavit, if true, appear to make out a reasonable case for a continuance. A reading of the transcript discloses that this case could have been separated from the others without prejudice. However, we have no way of knowing what was presented to the trial court on the question of a continuance, and we cannot assume that the facts set forth in the affidavit were made known to the trial court. We cannot, therefore, say that there was an abuse of discretion. Plaintiff, however, argues that we should consider the facts in the affidavit in determining whether plaintiff through no fault of his own received an unfair trial and should therefore be given a new trial.

These arguments are directed at issues that would arise in a motion for a new trial, and they should be addressed to the trial court because they involve issues of fact. *See Beane v. Beane*, 116 N.H. 259, 356 A.2d 669 (1976); *State v. Crossen*, 115 N.H. 137, 336 A.2d 239 (1975). There being no questions to be determined on the merits, the matter is remanded to the trial court for consideration of any motion which the plaintiff may file there. *See Beane v. Beane supra.*

*Remanded.*

LAMPRON, J., did not participate in the decision of this case.